**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)**

| | | |
|---|---|---|
| **MITSUKO MAEDA** | * | |
| Petitioner, | * | |
| v. | * | Civil No.: 1:19-cv-02396-BPG |
| **TOMMY KWOKWING WONG** | * | |
| Respondent. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>REQUEST TO EXPEDITE PROCEEDINGS PURSUANT TO HAGUE CONVENTION
LAW WITH INCORPORATED MEMORANDUM OF LAW</u>**

**The Convention on the Civil Aspects of International Child Abduction, done at The Hague on October 25, 1980; International Child Abduction Remedies Act, 22 U.S.C. 9001** *et seq***.**

Petitioner, Mitsuko Maeda (the "Mother"), by and through her undersigned attorneys, hereby requests expedited consideration of her Verified Petition for Return of Children to Japan filed against the Respondent, Tommy Kwokwing Wong (the "Father"), and requests the issuance of a Show Cause Order to be served by the United States Marshal Service requiring the immediate appearance of the Father and the children before this Court to: (i) ensure that the children are not further removed from this Court's jurisdiction; (ii) collect the children's travel documents; and (iii) schedule an expedited evidentiary hearing. In support the Mother states as follows:

## INTRODUCTION

1. The Mother has filed a Verified Petition for Return of Children to Japan ("Petition for Return") simultaneously with the filing of this Request to Expedite Proceedings and Issue Show Cause Order Pursuant to Hague Convention Law ("Request to Expedite").[1]

2. As fully explained below, the Mother files this Request to Expedite solely to request that this Court expeditiously issue a Show Cause Order to secure the Father and children's appearance before this Court and to schedule expedited proceedings on the Mother's Petition for Return in accordance with the Hague Convention, ICARA, 28 U.S.C. § 1657, and the clear mandate of Supreme Court of the United States as well as this Court's case law.

## FACTS IN SUPPORT OF REQUEST TO EXPEDITE

3. The Mother is a Japanese citizen. The Mother speaks Japanese. She is somewhat fluent in English. The Father is a Chinese and United States citizen. The Father is fluent in Chinese and English. The children have dual citizenship in Japan and the United States by virtue of their parents' nationalities.

4. The Father has retained the children in the United States from the children's proper custody and habitual residence jurisdiction of Japan. The retention occurred on June 22, 2019.

5. The parties were married in Japan.

6. After the children were born, the parties continued to reside separately. The children have always resided with the Mother by agreement of the parties. The Mother has

---

[1] The Petition was filed under The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Convention" or the "Hague Convention") and the International Child Abduction Remedies Act ("ICARA"). *See* T.I.A.S. No. 11,670 at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10,493 (1986), text available at: https://www.hcch.net/en/instruments/conventions/specialised-sections/child-abduction (last accessed August 20, 2019); 22 U.S.C. § 9001 *et seq.* (2015).

always been the primary parent involved in the children's daily upbringing, education, medical treatment, and care.

7.      The children have always been fully involved and integrated in all aspects of daily and cultural life in Japan. The children live in Japan with the Mother and have very close relationships with their extended family in Japan where the Mother's family resides.

8.      Throughout the marriage, the Father told the Mother that as part of his position with the United States Army, at some point in time it was inevitable that he would be transferred to the United States for a fixed period of time. The parties' discussions during their marriage about this potential temporary transfer order never led to any agreement for the Mother and children to relocate with the Father to the United States. The children are of Japanese heritage, their native language is Japanese, and the parties agreed from the outset of their children's births that the Mother and children would never live anywhere other than Japan.

9.      The Father told the Mother in August 2017 that he had received unexpected military orders to transfer from Japan to the United States beginning in January 2018.

10.     On August 9, 2017, the Father wrote to the Mother and told her that he had accepted the offer to transfer to Aberdeen Proving Ground and that he had come to the conclusion that this temporary period in the United States would be best for the family.

11.     The parties agreed that a limited duration, two-year maximum temporary stay in Maryland was feasible for their family, particularly given that the children were young and enrolled in elementary school and would be back home in Japan to complete elementary school there and begin secondary school. The parties agreed that a two-year maximum period in the United States would facilitate a smooth reintegration once the children returned to Japan.

12. The Mother and children traveled on December 26, 2017 and met the Father who was already in Maryland. The Mother then returned home to Japan to complete her university semester. On March 27, 2018, the Mother traveled to Maryland to begin her one-year temporary sabbatical with the University of Pennsylvania.

13. The Mother's one-year temporary sabbatical ended on March 31, 2019. The Mother therefore returned to Japan on March 25, 2019 to begin the new university semester on April 1, 2019.

14. The Mother planned to return to Maryland from August through September 2019 to continue caring for the children during the summer break from school. The Mother promised the children she would speak to them daily by telephone or video.

15. After the Mother returned home to Japan, the Father immediately began interfering with contact between the Mother and children.

16. In May 2019, the Father contacted the Mother and told her that he had purchased a new home in Pennsylvania.

17. The Mother took leave from her employment in Japan for ten days to travel to the United States on June 13, 2019 rather than waiting until the summer break in August because of her fear that the Father had plans to cease contact between the Mother and the children.

18. On June 15, 2019, the Mother confronted the Father about the children's passports. The Father refused to disclose the location of the passports.

19. The parties continued to argue throughout that night. The Mother suggested that perhaps the parties should separate. The Father immediately reacted with outrage and began screaming at the Mother and shouting abusive language at her. The next day, the Mother sought legal advice.

20. On June 22, 2019, the day of the Mother's scheduled return home to Japan, the Father asked to speak to the Mother at the home in Bel Air.

21. During the parties' discussion, the Father for the first time told the Mother that he has unilaterally decided that the children will remain in the United States and will not return to Japan at the conclusion of the two-year maximum temporary stay—thereby repudiating the parties' shared agreement for the children to return to Japan at the conclusion of the temporary two-year maximum period in the United States.

22. The Father asked the Mother to consent to the children's indefinite stay in the United States. The Mother of course refused. The Mother told the Father that she does not agree and has never agreed for the children to stay in the United States beyond the agreed-upon temporary two-year maximum period. She told the Father that she has never agreed for the children to live permanently or indefinitely anywhere outside of Japan. The Mother made clear to the Father that based on the Father's repudiation of the parties' agreement for the children to return home to Japan, the Mother no longer agrees for the children to be in the United States, even temporarily.

23. On July 2, 2019, the Father filed a Complaint for Custody in the Circuit Court for Harford County in Case No. C-12-FM-19-001184. The Mother has not participated in that proceeding and has not been served with the Complaint or 90-day Writ of Summons. According to the public docket, the Father sought and obtained an ex parte temporary order prohibiting the children's removal from the United States until further order.

24. The Father has now also restricted the Mother's access time with the children. Between the date of the Father filing his state court custody Complaint and the date of filing this

Petition, the Mother has not had any in-person access with the children and the Father has only allowed the Mother to communicate to the children via Facetime supervised by him.

25.     The Mother has also now learned that the Father has imminent plans to relocate the children to York County, Pennsylvania before the start of the 2019-2020 school year and, upon information and belief, that he has unilaterally enrolled the children for a full year of school in Pennsylvania, or alternatively, in Maryland.

26.     The parties never had a shared intent for the children to live anywhere other than Japan. The parties' only last shared, settled intent with respect to the children's habitual residence has been that the children will reside in Japan with the Mother.

27.     The children have resided in Japan for all of their lives. The parties agreed to a fixed temporary two-year maximum period for the children to live in the United States and for the children to return to Japan no later than December 2019.

28.     The Mother has submitted her Hague Convention Return Application ("Hague Application") to the Japanese Ministry of Foreign Affairs (the Japanese Central Authority), which will then be transmitted to the United States Department of State Office of Children's Issues (the United States Central Authority).

29.     The Mother therefore requests expedited consideration of her Petition for Return as fully explained below pursuant to the treaty's mandate and the law applying the Convention.

### LEGAL AUTHORITY IN SUPPORT OF EXPEDITED REQUEST

30.     The Convention came into effect in the United States of America on July 1, 1988, and was ratified between the United States of America and Japan on April 1, 2014.[2] The objects of the Convention are as follows: (1) to secure the immediate return of children wrongfully

---

[2] *See* Hague Abduction Convention Country List, text available at: https://travel.state.gov/content/childabduction/en/country/hague-party-countries.html (last accessed August 20, 2019).

removed or wrongfully retained in any Contracting State; and (2) to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in other Contracting States. Convention, art. 1.

31. The Hague Convention contemplates an outside limit of six weeks for the determination of the merits of a wrongful retention case from the date of filing. Convention, art. 11 (emphasis added).

32. ICARA establishes that Hague Convention cases should not follow the standard civil action schedule. Rather, Contracting States shall use the most expeditious procedures available:

> Contracting States shall take all appropriate measures to secure within their territories the implementation of the objects of the Convention. For this purpose they shall use the most expeditious procedures available.
>
> \*      \*      \*
>
> The judicial or administrative authorities of Contracting States ***shall act expeditiously*** in proceedings for the return of children.
>
> If the judicial or administrative authority has not reached a decision *within six weeks* from the date of commencement of the proceedings, the applicant or the Central Authority of the requested State, on its own initiative or if asked by the Central Authority of the requesting State, shall have the right to request a statement of the reasons for the delay. . . .

*See* Convention, arts. 2, 11 (emphasis added).

33. The Supreme Court of the United States has also re-confirmed and made crystal-clear that "[t]he Hague Convention mandates the prompt return of children to their countries of habitual residence." *Chafin v. Chafin*, 568 U.S. 165, 180 (2013).

34. The Supreme Court has further emphasized "the need for both speed and certainty in Convention decision-making" and instructed that Contracting States to the Convention must

"use the most expeditious procedure available to secure the return of a child wrongfully removed or retained away from her habitual place of residence." *Id*. at 182-83 (Ginsburg, J. concurring).

35. It is therefore now well-settled that Hague Convention cases should not proceed on the standard pre-trial and trial schedule.

36. Rather, these cases must be expedited and must proceed first with an expedited initial scheduling hearing, and then the case proceeds to an expedited evidentiary hearing on the petition for return.

37. The Honorable Peter J. Messitte of this Court has observed and instructed that:

> Unquestionably at the heart of the Convention is prompt action by courts. Convention art. 11 . . . This comports with the obvious desideratum that any dispute involving custody of a child be decided quickly so as to minimize the anxiety and unsettlement of the child and to avoid assimilation of the child into strange environs which could lead to subsequent difficulties in separation.
>
> The rules of procedure applicable to ordinary civil cases would seem to be at odds with the Convention and ICARA's premium on expedited decision-making. Twenty date to answer and petition, Fed. R. Civ. P. 12(a)(1)(A), utilization of various discovery devices, , Fed. R. Civ. P. 33 (interrogatories); Fed. R. Civ. P. 31 (depositions); and extended trial time work at cross-purposes to the objective of prompt disposition.

*Zajazckowski v. Zajaczkowska*, 932 F. Supp. 128, 130 (D. Md. 1996), *aff'd* by 1997 U.S. App. LEXIS 10154 (4th Cir. 1997) (citations omitted).

38. In addition, 28 U.S.C. § 1657 states, in pertinent part, as follows:

> [T]he court shall expedite the consideration of any action … if good cause therefore is shown.  For purposes of this subsection, "good cause" is shown if a right under the Constitution of the United States or a Federal Statute … would be maintained in a factual context that indicates that a request for expedited consideration has merit.

39. Applying Section 1657 here, the Hague Convention is a treaty under Article VI of the United States Constitution and such cases are governed by statute, namely 22 U.S.C.§ 9001

*et seq*. The Mother's Hague Convention case presents a factual context indicating this request for expedited consideration has good merit. Good and meritorious cause therefore exists, and "the court shall expedite the consideration of" this action. *Id.*

40. Moreover, the importance of securing the attendance of the Father forthwith through the mechanism of a Show Cause Order cannot be underestimated. ICARA is unequivocal that a Hague Convention petitioner can only bring a Hague Convention action in the place where the children are located. ICARA § 9003. For this reason, ICARA makes it clear that this Honorable Court can take any provisional remedies to ensure that the children in question are not removed from its jurisdiction. ICARA § 9004.

41. The issuance forthwith of a Show Cause Order that contains an admonishment to the Father to appear before this Honorable Court or be subject to its contempt powers is the appropriate and proportionate mechanism in this case to ensure that the Father will appear, and not remove the children from this Court's jurisdiction.

42. In accordance with the Hague Convention, ICARA, 28 U.S.C. § 1657, the requirement of the Supreme Court of the United States that courts use the most expeditious procedures available, and the good and meritorious cause to expedite consideration of the Mother's Petition, this Court should enter a Show Cause Order forthwith in the form submitted to this Court, setting a date for the Father to appear with the children and for the Mother's counsel to appear on her behalf, on the first date available on the Court's calendar, and thereafter allowing for full resolution of this matter within six weeks of the date of filing this Request.

### NOTICE IS NOT REQUIRED BEFORE ISSUANCE OF ORDER FOR EXPEDITED SCHEDULING HEARING

43. It is in the interests of justice to proceed with the issuance of a Show Cause Order in the circumstances of this case.

44. ICARA § 9004 provides that in a proceeding for the return of a child, "[n]o court exercising jurisdiction … may … order a child removed from a person having physical control of the child unless the applicable requirements of State law are satisfied." ICARA § 9004. In this case, the law referred to is that of the State of Maryland.

45. Maryland law addresses the appearance of the parties and children in international child disputes in the Uniform Child Custody Jurisdiction and Enforcement Act, codified as MD. CODE ANN., FAM. LAW, §§ 9.5-101 *et seq*. Maryland law addresses the appearance of the parties and the child in such cases in § 9.5-210 of the UCCJEA. That section authorizes this Court to order the appearance of the child and custodian or custodians together. *Id.* This Court therefore has the authority to issue an order, ordering the appearance of the Father and children in that the provisions of 22 U.S.C. § 9004 can be met.

46. The United States federal courts have routinely held that ex parte action is appropriate in these cases. The United States District Court of South Carolina has recently explained:

> To accomplish the goal of maintaining the status quo, the Court is empowered to take appropriate measures "to prevent . . . prejudice to interested parties by taking or causing to be taken provisional measures." Hague Convention, art. 7(b). These "provisional measures" are available to the court exercising jurisdiction over the action just as if it were the appropriate court under State law—indeed the ICARA requires the court exercising jurisdiction to ensure that the applicable requirements of State law are satisfied. 22 U.S.C. § 9004(b). Once those requirements are met, the **court is permitted to implement all necessary procedures "to prevent the child's further removal or concealment before the final disposition of the petition."** Id. §9004(a).

*Alcala v. Hernandez*, No. 4:14-CV-4176-RBH, 2014 WL 5506739, at *2 (D.S.C. Oct. 30, 2014) (emphasis added).

47. It is clear under federal law that ex parte action in merely issuing a Show Cause Order is a reasonable and precautionary measure to preserve the jurisdiction of this Court.

48.     The issuance of a Show Cause Order—that will be immediately served on the Father along with the Petition for Return and all related filings—without notice to the Father will not prejudice him and does not make any determination on the merits of the Petition.

49.     The Father will be provided notice of the Show Cause hearing. The Mother is not requesting an ex parte hearing of any kind. At the Show Cause hearing, the Father will have an opportunity to be heard in satisfaction of due process requirements.

50.     The only effect of this Court issuing a Show Cause Order will be to ensure that the children are not removed from the Court's jurisdiction before the merits of the Petition for Return can be heard.

51.     The Mother of course recognizes and appreciates that there are numerous other equally and/or more important cases pending before this Court. But for the Father's wrongful retention of the children, which has caused the filing of this action, the Mother would not now be seeking expedited consideration of the merits of this case.

**WHEREFORE**, Petitioner, Mitsuko Maeda, respectfully requests the following relief:

A.      That a Show Cause Order in the form submitted to this Honorable Court be entered forthwith, setting a date for the Respondent to appear with the children, on the first date available on the Court's calendar, for an initial show cause and scheduling hearing; and

B.      That this Court's Show Cause Order be served on the Respondent by the United States Marshal Service;

C.      In the alternative, that this Court's Show Cause Order be served on the Respondent's Maryland state court counsel, Stephen J. King, Esquire

D.      That the Petitioner be excused from appearing in person for the initial show cause and scheduling hearing as long as the Petitioner's counsel appears on her behalf and has full

authority from the Petitioner to schedule the expedited evidentiary hearing and all related deadlines; and

E.    That an evidentiary hearing be scheduled within six weeks of the filing of this Request to Expedite Proceedings; and

F.    That this Honorable Court grant such other and further relief as justice and its cause require.

Respectfully submitted this 20th day of August, 2019.

/s/ Leah M. Hauser
Stephen J. Cullen, Bar No.: 11838
Kelly A. Powers, Bar No.: 28567
Leah M. Hauser, Bar No.: 14156
Miles & Stockbridge P.C.
100 Light Street
Baltimore, Maryland 21202
(410) 385-3629
(410) 385-3709 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com
lhauser@milesstockbridge.com

*Attorneys for Petitioner*